UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.             Case No. 18-CR-91

EBONY LAVONNE SMITH,

    Defendant

## PLEA AGREEMENT

1. The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Gail J. Hoffman, Assistant United States Attorney, and the defendant, Ebony Lavonne Smith, individually and by attorney Daniel Resheter, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in one-count indictment, which alleges a violation of Title 18, United States Code, Section 1709.

3. The defendant has read and fully understands the charge contained in the indictment. She fully understands the nature and elements of the crime with which she has been charged, and the charge and the terms and conditions of the plea agreement have been fully explained to her by her attorney.

4. The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

1

*Between April 1, 2017, and January 25, 2018, in the State and Eastern District of Wisconsin,*

**EBONY LAVONNE SMITH,**

*while employed by the United States Postal Service and entrusted with articles of mail, did steal U.S. currency contained therein.*

*All in violation of Title 18, United States Code, Section 1709.*

5. The defendant acknowledges, understands, and agrees that she is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish her guilt beyond a reasonable doubt:

On March 23, 2015, Ebony Smith began her employment with the U.S. Postal Service (USPS). On March 28, 2017, Smith was assigned to deliver mail in Wauwatosa, Wisconsin, zip codes 53213 and 53226. As early as August 2017, USPS customers located in these zip codes complained that they had not received greeting cards in the mail. As a result of these complaints, USPS identified Smith as the mail carrier who would have delivered this mail.

On January 25, 2018, a piece of first class mail containing a greeting card and a $20 bill were prepared for delivery. The greeting card and currency were placed in a blue envelope addressed: BHBC, Attn: Jill "Birthday Girl" Moody, 62XX W. State St., Wauwatosa, WI 53213 with a return address of Melissa Moody, 13XX N. 12th St., #5364, Milwaukee, WI 53205. The envelope also contained a transmitter that signaled when the envelope was opened.

On this same date, after preparing the envelope with the transmitter, a USPS supervisor placed the envelope in a container earmarked for Smith's delivery route. While under surveillance, a USPS supervisor first observed Smith rifling through trays assigned to other delivery routes. The supervisor then observed Smith remove greeting cards, placing them in her tray. Shortly thereafter, Smith picked up the mail for her delivery route, including the blue test envelope, and brought it to her assigned postal vehicle.

Smith began delivering the mail and when she arrived at the address of the blue test greeting card, the transmitter activated, signaling that the envelope had been opened. At this time, investigating postal agents approached Smith who was standing outside of her vehicle. The agent identified himself as a USPS special agent, and immediately read Smith her rights from a pre-printed card.

2

The agent located the opened blue envelope which no longer contained the $20 bill. The agent allowed Smith to retrieve her purse from the vehicle, and she gave the agent the test $20 bill which was in the side pocket of her purse (the serial number on the $20 bill Smith gave the agent matched the serial number of the test $20 bill). Postal authorities also located a bundle of 31 USPS customer greeting cards within a USPS satchel on the floor of the front passenger seat side of Smith's vehicle. In addition, agents also recovered 23 greeting cards and a Starbucks gift card from between the front seat of Smith's USPS vehicle. Furthermore, agents discovered a roll of tape and letter openers within the driver's side door of Smith's USPS vehicle.

Smith was transported to the Wauwatosa Branch Manager's Office. Once at the Branch Office Smith reviewed and orally received a form advising her of her *Garrity* rights. Smith indicated she understood her rights and waived each one, initialing after each right on the waiver of rights form which she signed. Smith, in part, stated: that she began stealing cash from greeting cards when she began her route in the Washington Highlands; that she would steal mail approximately one or two days per week; that she stole cash to pay pills and take care of her four children. At first Smith estimated she would steal approximately $40.00 per week from customer mail and later started stealing $50.00 to $100 per week from the greeting cards. Smith also admitted to using tape to reseal some of the greeting cards she opened.

On July 24, 2018, the USPS was contacted by "Wrench N Go," an auto salvage yard regarding a large quantity of U.S. Mail that was discovered in the rear of a vehicle the company had started to scrap. The vehicle, a Honda Odyssey, had been received from the City of Milwaukee as a towed vehicle. Multiple letters were located in the vehicle addressed to Ebony L. Smith and her husband at their known home address. In addition, a review of the vehicle's registration revealed that it was registered to a person and addresses associated with the defendant and her husband.

A review of the First Class Mail recovered from the Honda Odyssey revealed that there were 6,625 First Class greeting card envelopes and 540 personal checks, some within their greeting card with envelopes, and 45 unopened greeting cards. The postmarks on the greeting cards ranged from March 3, 2017 to January 13, 2018.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## **PENALTIES**

6. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: 5 years prison and $250,000 fine. Each count also carries a mandatory special assessment of $100, and a maximum of 3 years of supervised release. The parties further recognize that a restitution order

3

may be entered by the court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 27 of this agreement.

7. The defendant acknowledges, understands, and agrees that she has discussed the relevant statutes as well as the applicable sentencing guidelines with her attorney

## ELEMENTS

8. The parties understand and agree that in order to sustain the charge as set forth in count one, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the defendant was a Postal Service employee;
> Second, the item of mail, or thing contained within the item of mail was entrusted to the defendant for the purpose of being conveyed by mail; and
> Third, the defendant stole with intent to convert to her own use a thing contained within the item of mail.

## SENTENCING PROVISIONS

9. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

10. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

11. The defendant acknowledges and agrees that her attorney in turn has discussed the applicable sentencing guidelines provisions with her to the defendant's satisfaction.

12. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea,

4

the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

13. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

14. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

## Base Offense Level

15. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in the indictment is 6 under Sentencing Guidelines Manual § 2B1.1(a)(2).

## Specific Offense Characteristics

16. The parties agree to recommend to the sentencing court that a two-level increase for loss under Sentencing Guidelines Manual § 2B1.1(b)(1)(B) is applicable to the offense level for the offense charged in the indictment.

5

17. The parties further agree to recommend to the sentencing court that a two-level increase for more than 10 victims under Sentencing Guidelines Manual § 2B1.1(b)(2)(A) is applicable to the offense level for the offense charged in the indictment.

18. The parties further agree to recommend to the sentencing court that a two-level increase for postal worker abuse of trust under Sentencing Guidelines Manual § 3B1.3 is applicable to the offense level for the offense charged in the indictment.

### Acceptance of Responsibility

19. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility.

### Sentencing Recommendations

20. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

21. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

22. The government agrees to recommend a sentence within the low-end of the applicable sentencing guideline range, as determined by the court.

### Court's Determinations at Sentencing

23. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the

imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

24. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

25. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

26. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form.

### Special Assessment

27. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

7

Case 2:18-cr-00091-LA   Filed 09/12/18   Page 7 of 12   Document 16

## Restitution

28.     The defendant agrees to pay restitution in an amount to be determined by the time of sentencing. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

## DEFENDANT'S WAIVER OF RIGHTS

29.     In entering this agreement, the defendant acknowledges and understands that she surrenders any claims she may have raised in any pretrial motion as well as certain rights which include the following:

- a.    If the defendant persisted in a plea of not guilty to the charges against her, she would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

- b.    If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

- c.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

- d.    At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and she would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on her own behalf. The defendant would be entitled to compulsory process to call witnesses.

8

e. At such trial, defendant would have a privilege against self-incrimination so that she could decline to testify and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify on her own behalf.

30. The defendant acknowledges and understands that by pleading guilty she is waiving all the rights set forth above. The defendant further acknowledges the fact that her attorney has explained these rights to her and the consequences of her waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

31. The defendant acknowledges and understands that she will be adjudicated guilty of the offense to which she will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

32. The defendant knowingly and voluntarily waives all claims she may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

### **Further Civil or Administrative Action**

33. The defendant acknowledges, understands, and agrees that the defendant has discussed with her attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any

other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

34. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

35. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

36. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

37. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

38. The defendant acknowledges and understands if she violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea

10

agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of her breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and her attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that she continues to be subject to the terms of the proffer letter.

## **VOLUNTARINESS OF DEFENDANT'S PLEA**

39. The defendant acknowledges, understands, and agrees that she will plead guilty freely and voluntarily because she is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

11

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 9/11/2018

EBONY L. SMITH
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 9/11/2018

DANIEL RESHETER
Attorney for Defendant

For the United States of America:

Date: 9/12/18

MATTHEW D. KRUEGER
United States Attorney

Date: 9/12/19

GAIL J. HOFFMAN
Assistant United States Attorney

12